HEAD (MEANY v.). See Case No. 9,379.

## Case No. 6,293.

### HEAD v. STARKE.

[Chase, 312; [1] 3 Am. Law T. Rep. U. S. Cts. 155.]

Circuit Court, D. Virginia. Sept., 1870.

TRUSTEES—LIABILITIES — CONFEDERATE BONDS — NON-RESIDENT BENEFICIARIES—CONFEDERATE CURRENCY.

1. It being agreed that the most prudent and careful business men were in the constant habit of making investments in Confederate bonds, it would seem unreasonable to call in question the good faith or prudence of the administrator who does likewise.

2. Especially is this so when such investment by an administrator is sanctioned by the state court. Even if there had been no such decision, this court will not say that the administrator ought to be charged, if the investment were free from objection on other grounds.

3. It would seem, however, that where a trustee held funds in the Confederacy, for the benefit of parties within and adhering to the United States, that an investment of such funds in Confederate bonds will not exonerate such trustee from accounting for the value of the funds invested, to his non-resident cestui que trustees.

4. Dealing in Confederate currency which was imposed on the community by irresistible force is essentially different from an actual advance of money to the Confederacy itself. In this case there was an investment of trust funds, entirely voluntary on the part of the administrator, on a loan to the Confederate government, to aid it in its efforts to dismember the Union.

5. This administrator paid his trust fund actually into the treasury of the Confederate States, and received directly from the treasurer a Confederate bond for the amount so paid in. Such an investment can not receive the sanction of a court of the United States. It is inoperative as a discharge from responsibility.

In equity.

CHASE, Circuit Justice. This is a suit in equity, brought to enforce payment by the defendant to plaintiffs of their distributive shares of the estate of the decedent, John Starke.

The proof shows that the plaintiffs, Adeline Head and Charlotte R. Starke, were children, and are the only surviving heirs of John Starke, and that the defendant [Talley] had in his hands as administrator on January 31, 1860, the sum of seven thousand two hundred and forty-nine dollars and eighty-eight cents, belonging to the estate. It is claimed by the defendant that he subsequently disbursed considerable sums in payment of just claims against the estate, by which the balance in his hands was so far

1 [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

reduced that on September 20, 1863, only the sum of five thousand and odd dollars remained.

The defendant states that the records and papers of the Hanover county court were destroyed by fire, and among them the records of the settlement by which this balance of about five thousand dollars was ascertained.

It is agreed by counsel that the records in sundry cases, in which certain decrees and orders were made affecting the balance in the hands of the plaintiff, were destroyed by the fire mentioned by the defendant; but there is no agreement that the record of the last settlement on which he relies was thus destroyed.

It appears in proof that the defendant, as administrator, invested five thousand dollars in the loan of the states then confederate in armed hostility to the United States, and received from the officers of the so-called "Confederate Government" a certificate for that sum.

It is not disputed on the part of the defendant that there must be a decree for an account, and that he is liable to the complainants for whatever balance may be found in his hands exceeding the five thousand dollars.

The important questions in the case are two: (1) Was the investment in the loan of the Confederate States one which a prudent person acting as trustee or administrator might make? And (2) was the investment being actually made in a loan to a politico-military organization formed for the purpose of overthrowing the union of the states under the national constitution, and establishing a new confederation in a portion of those states, one which, under any circumstances, can be recognized in the courts of the United States as excusing the administrator from accounting for the funds in his hands to the parties otherwise entitled lawfully to receive them?

Upon the first question little may be said. It must indeed be regarded as already decided. The court of the state authorized by law to consider and sanction investments by administrators sanctioned the loan under consideration; and it is agreed that the most prudent and careful business men were in the constant habit of making such investments.

It would seem, therefore, to be unreasonable to call in question the good faith or prudence of the administrator in the circumstances by which he was surrounded. If there had been no decision of the state court approving the investment, we could not say that the administrator ought to be charged if the investment were free from objection on other grounds.

This makes it necessary to consider the second question. But we need not examine it at length, for in the case of Botts v. Crenshaw [Case No. 1,690], in this court, we held that investment even of Confederate curren-

cy in Confederate bonds by an attorney who had collected a debt due to a citizen of Kentucky, in that currency under what were considered to be justifying circumstances did not absolve him from accounting for its value, although in that case as in this the investment had been sanctioned by a court, whose decision but for the abnormal condition created by the Rebellion would have been conclusive.

This case, we think, covers the present in principle. So in the case of Shortridge v. Macon [Case No. 12,812], the circuit court of the United States for the district of North Carolina, speaking through the presiding judge of the court, held that compulsory payment to a receiver under an order of a court of the Confederate States of a debt due to a citizen of Pennsylvania, did not excuse the debtor from the duty of paying the sum due to the original creditor.

And we think that these decisions are sustained by the reasoning of the supreme court in the case of Texas v. White, 7 Wall. [74 U. S.] 733. Nor is there anything in the case of Thorington v. Smith, 8 Wall. [75 U. S.] 12, which conflicts with the cases of Botts v. Crenshaw and Shortridge v. Macon [supra]. In that case the supreme court held that contracts stipulating for payment in Confederate currency "can not be regarded for that reason only" as void, but in this case there was something more than the mere use of the currency imposed on the community by irresistible force. There was an actual advance of money to the Confederacy itself. There was an investment of trust funds, entirely voluntary on the part of the administrator, in a loan to the Confederate government to aid it in its efforts to dismember the Union, and to overthrow the national government.

Whatever may have been the motive inducing such an investment, however it may have been warranted by example, or even by judicial authority, itself involved in the general rebellion, it is impossible that it should receive the sanction of a court of the United States.

We must hold, therefore, the investment complained of to be inoperative as a discharge from responsibility to complainant, and will so decree, ordering an account by the defendant with the complainants and payment of such a sum as may be found due.